Bail pending appeal is reserved for a limited category of cases, but this is one of them. Unlike in most criminal appeals, it is uncontested here that Mr. Hanna is not a flight risk or a danger to the community or appealing for purpose of delay. Bail is accordingly warranted for the limited duration of this appeal if he raises at least one substantial question that would result in reversal or a new trial. This extraordinary case presents many of those questions. So what's your best one? I think, Mr. I would say there's three, but I'd start with the quid pro quo, which was the basis for reversal by this court in Silver II. And I think both the jury instructions and the evidence on quid pro quo are bases for reversal or for a new trial. Let me ask you to focus on one in particular, the sale, the vote for the sale of military equipment to Egypt. Explain to me why that, you know, construing the evidence most favorably the government, why that wasn't a quid pro quo. You had a text message saying, I'm going to sign off on this sale today. There was payments that were made towards Nadine's mortgage, three checks. So you have money being paid. Why is that one? You know, there's a lot of other ones, but to me, that one seemed to be from the government standpoint, the most compelling one. Right. So two quick responses on that. There's a time, a serious timing problem in that the evidence you referred to about the military sales happened in 2018, but the payments that the government is alleging happened. I know there could have been an agreement. You know the law is that as long as there's an agreement in advance, the money can come later, right? That certainly is the law, but an important... And you have to infer it most favorably to the government. You do, but you have to also look, and this is the first argument, at the jury instructions. And here in the critical jury instruction in which the court said, at a minimum, the government must prove, it omitted the key language from silver two in which the court said that at the time of the payment, there has to be... On the page before that in the jury instruction, the district judge said the government must show both. There was a particular question or matter on which the official promised to act in exchange for a thing of value, and two, that the particular question or matter was identified and agreed upon at the time the public official here, Mr. Menendez, accepted or agreed to accept the payment or benefit. It does say that on the previous page, but the instruction says, at a minimum, you must find, and that it omits what is a required finding under this court's case law. But a quid pro quo, of course, has two sides, and that brings me to the second argument, which is the official act. And as Judge Bianco, you pointed to a statement about the senator's intended legislative act that has multiple problems, both under the official act statutory requirement and the speech or debate clause. At a minimum, there's a serious speech or debate question here where... There's a serious speech or debate question. Why? Because they omitted the text where he said, tell the guy that I'm going to approve the sale? Absolutely. That's a paradigmatically... So if he said at the time that he took a bribe, I'm going to approve the sale, that would be admissible, right? I'm sorry, say it again? If he said at the time that he took a payment, and he said, okay, in exchange for this payment, I will approve the sale, that would be admissible, right? I think that would be a closer question, but here where there's... Why is it different? So it's still a statement of what he's going to do in the future, right? Well, it's a statement here that he is doing it at the time. I mean, this is not admitted to prove the promise. Again, this was much further in the past. It's admitted to prove what he was about to do. If he stood on the floor of the Senate and said, I'm about to cast this vote... Well, it is admitted to prove the promise. It's just that the statement comes later, but it's still before he performs the act, right? It's true. Although, you know, this Supreme Court has said in cases like Brewster that the speech or debase clause is intended to be interpreted broadly and goes to legislative acts. It's at least a substantial question on that. In Helstocki, it said that it only extends to acts that have already been performed. It's true, but I think if you look at the text here, it's talking about the act he was performing. It is talking about the legislative act itself. Going to sign off. Going to sign off. He hadn't done it yet, right? I think respectfully, Judge Bianco, if you take that to its logical conclusion, that would cover a senator saying, I'm about to introduce this bill or I'm about to cast this vote. And it can't be that... All right. In your views that the president... And then on venue, you make an argument that there's a lack of venue, but for that one, they had a meeting. They had a dinner in New York City, right? Nadine, Senator Menendez and General... And Hannah were at the meeting together, right? I might respect... I don't think we're raising a venue argument. I might respectfully reserve that for my colleague, Mr. Clement, on behalf of Mr. Davies. But if I can make one last point back to my third argument that I told Judge Sullivan I had at the beginning, it's the laptop problem. This is the unusual case in which the government admits to having provided the jury during deliberations with evidence that was excluded under the speech or debate clause. And Judge Menendez, we can debate whether the other evidence should have been excluded or not. But here, the judge ruled that this was excluded under the speech or debate clause, and it was still presented to the jury. Well, it's given to the jury on a laptop, and then the district court makes a finding that the jury... It's infinitesimal chance that it looked at it and it wouldn't have understood it anyway. So it's basically saying it's a harmless error, right? And if we were reviewing this on appeal, we would review an evidentiary ever for harmless error. So a couple of points. I don't think you would review it for harmless error with respect. I think this court in the case... So the Supreme Court has told us that most constitutional errors are reviewed for harmless error, right? It's true, although the Supreme Court has said the speech or debate clause is not like most other constitutional errors. I mean, yeah, but the speech or debate clause is an evidentiary privilege. So we reserve structural errors for constitutional errors where that affects the conduct of the whole trial. But if you had a trial, the speech or debate clause prohibits the introduction of prior legislative acts. It could be that there's an erroneous admission of some act that occurred 30 years ago that's obviously irrelevant to everything. You're not going to order a whole new trial because that was admitted, but that's your position? Well, you know, I don't think you have to agree with me on that position, that it's a structural error in all cases. I think that's a good argument. I think it's a substantial question, the kind of question that at least warrants bail. No, but I don't think it's a substantial question. I'm asking, like, does it make sense to me to say that that would be a structural error whenever there's a speech or debate clause violation? Because we evaluate evidentiary, you know, erroneously admitted evidence for harmless error all the time. That's not something that affects the whole course of the trial. Even if that were where the court ultimately landed, this is a classic harmful error because the government itself said this was critical evidence. It was the subject of extensive debates at the trial. Well, they said it was critical evidence because they wanted to admit it, but then they didn't get to, right? Well, except they gave it to the jury. It wasn't critical evidence in the form of a laptop that was given to the jury that they might not have looked at and didn't get any argument about its import. Yeah, but if the question is whether it's harmless error, I think you should take the But that's what the district court decides, right? So the district court says, looking at it in isolation, it's unlikely the jury even saw it, and if they did, they wouldn't have understood it, right? So even if it were critical evidence, had it been put in their faces and explained to them, like, that's just not the circumstances of this case. So maybe my last point, you know, with respect to that, I just don't think that's a legally permissible course of reasoning for the district court to adopt this case in the Nikonza case. So you're suggesting it's sort of a strict liability. In other words, it went in there, and what are you saying, that the court should have gone and polled the jurors to see if they had actually looked at these things on the laptop? You know, I think this happened months later, so I don't think that was possible. That would be a different question if that were possible. But here, there was no opportunity to do that. And unlike in the Nikonza case, that my friend for the government cites, where the court could go in and look at the sealed folder, there was no equivalent of that kind of inquiry here. So the court made a finding, right, that it is virtually impossible that anybody looked at this. And you're saying that that, do we owe any deference to that? I think, with respect to the district court, that finding is not based on anything except speculation. It's certainly not based on polling the jury. It's not based on physical evidence as it was in the Nikonza case. They had 3,000 exhibits, and the amount of time they had the laptop, that it was unlikely that in the 12 hours they had the laptop that they were able to go through all 3,000 exhibits, thousands of pages of documents, and find it, right? I mean, that's a mathematical calculation, but I think that's awfully tough to say that's enough. Didn't the district court also rely on waiver, the fact that the defense lawyers had the opportunity to review it? I don't think we've ever, when something has erroneously gone into a jury room, an exhibit, reversed a conviction where the defense counsel was given an opportunity to review it. So a couple of responses on that. First of all, I don't think you've ever had a speech or debate objection in that context. And Heldstocke, among other things, says, at least suggests that the speech or debate clause can't be waived. So I think that sets this apart from every other case. No, it's not that the privilege has been waived. It's the challenge to the information going in that's waived, not the privilege itself. Well, in this case, though, I think they merged, because the objection to it going in was that it was excluded under the speech or debate clause. This was the critical evidence that the government wanted in. In any event, I think your cases have said waiver has to be knowing and voluntary, and given that the defendant had 12 hours to review, as you're pointed out. But it doesn't matter, because we're imagining what's going to happen on an appeal, right? So, like, the district court says, well, you didn't object to it, or whatever. But, like, when it's going to come up on appeal, we're going to decide whether the error, you know, we would treat it as an evidentiary error. That means it's not waived. And then the question is whether the error was harmless. And it's going to look like an analysis like the district court did. I mean, I'd be happy for you to go past waiver. I think that would be the right course. I don't think you should reach harmless error for the reasons we've already discussed. But if you do knock out the district court's waiver... Well, why would it be harmful? I don't know. So there's a text message that says, you know, I heard that Senator Menendez put a hold on some funding. And there's, like, three exclamation points. And then there's another text message. It does seem like it's hard to understand the import of those documents without context. So why do you think that that would have infected the jury's whole decision? Well, I think that, with respect, the jury had a lot of context, because they had just sat through a nine-week trial in which the government's official act theory for a number of these counts turned on Senator Menendez's signing off on the Egypt aid, as Judge Bianco and I were talking about earlier. So if the government is able to say, here are previous examples where he has placed holds on military aid, a core legislative act, and his role as chairman of the Senate Foreign Relations Committee, that is strong evidence of the government's case. That's, after all, why they wanted it admitted. And I'd say, just to remind the court again, you know, the question is not the ultimate disposition of the merits appeal. We might be able to disagree on that. The question for now is whether, you know, for a case where the opening briefs are due in one month, Mr. Hanna can postpone any reporting to prison while the court resolves this important appeal. All right. Well, that's only your third most important argument, so. All right. Thank you, Mr. Michel. Thank you, Your Honor. Mr. Clement. Thank you, Your Honors. May it please support Paul Clement for Mr. Davies. And I will just sort of start by saying, as with Mr. Hanna, there's no question about flight risk or purpose of delay, so we're just to the question whether there's a substantial issue. I think there is a substantial issue in spades. I think, just to take a step back. Well, give us the, I mean, we've read the briefs, obviously, and I know you've got multiple arguments, but sort of, you know, you've got four and a half minutes. Give us the best punch you got. Well, I'm going to start with the laptop, because I think the laptop is a huge problem for the government. I don't know that you can do normal, harmless error here. I mean, part of the problem here is the government not only introduced that, or had it introduced, but then they wiped the laptop. So we don't know exactly what went to the jury. And then, speech or debate clause material is different. And, Judge Monashi, I think it is absolutely structural error. And the reason it's structural error is if you go back to the purpose of the clause, the clause protects from questioning in another place. So just to have the legislative act admitted into evidence in a case against a sitting senator and his co-conspirators. But the way it protects that is by giving an evidentiary privilege, where certain evidence is not admissible and can't be introduced, and, you know, you can't hold the senator liable for it. That's the way it functions. And so it looks like an evidentiary privilege like other ones. And if the Supreme Court has told us most constitutional errors are reviewed for harmless error, so you're saying in the hypothetical I mentioned, where there's just some piece of evidence that's totally tangential to the case, like some legislative act that occurred 30 years ago that shouldn't have been admitted, but was like just to prove somebody's identity or something, like not really that relevant, you would still order a whole new trial? Yes, I would. And I think that's what the Supreme Court cases actually require. And the Helstosky is as clear as it can be on the waiver question. I'm just quoting from it. The ordinary rules for determining the appropriate standard of waiver do not apply in this setting. And that is the thrust of the waiver holding is, well, ordinarily Well, I mean, but that's why the court kept it out. But I think it seems to me that this argument requires a presumption that the jury even saw it, though, isn't that? Don't we have to get there first? No, it went before the jury. And just to put this in context, I mean, it's pure speculation. I mean, it may be just as a matter of the clock and everything. It's speculation that they probably wouldn't have gotten to this document. But one of the few jury questions during their deliberations was to ask for a cord so they could access the laptop. So we know they accessed the laptop. And if they accessed a laptop that had excluded speech or debate clause materials, that seems to me to raise at least a substantial question here for bail pending appeal. And I think it does go to this notion that the core protection of the clause, it's not just a normal testimonial privilege. It does protect you from being questioned in another place. But the presumption would be that the jury then did see this. I don't... Which is counter to what the district court found. I don't think it's a matter of whether the jury saw it. I think the fact that they were exposed to it is enough to raise the problem under the speech or debate clause. I mean, you just keep talking about the importance of it, that it's a constitutional protection, but most constitutional errors are reviewed for harmless error, right? So it has to be And it's an individual piece of evidence that's put on a laptop before the jury does not undermine the whole conduct of the trial. With all due respect, Judge Menasche, I think if you go back and read the Weaver case that we cited in our brief, that's almost the opposite of the right way to think about structural errors. Structural errors are not things, often they're things where the constitutional protection doesn't just go to guilt or innocent or making the proceedings more efficient. And the example the Supreme Court used was the right to represent yourself in court. I think we all agree that the right to represent yourself in court is probably not going to help you in the end. And so if you looked at it through normal harmless error rules, you'd say, well, we denied him the right to represent himself, but he's probably lucky, so harmless error. And the court says in Weaver, no, that's a structural error. And it's a structural error precisely because the main point of the constitutional protection is not just to make the proceedings more efficient or more fair. But the expressive right of the defendant or something like that. Is that what you're saying? Like there's just like a liberty interest in representing yourself. And we don't know how the trial would have turned out if you did. And so we treat it as structural. Yeah. And here, too, we have this analogy here because the jury could look at the thing on the laptop and could question Senator Menendez motives. And even if that had nothing to do with the verdict, like just that activity is so offensive that we would vacate the trial. I mean, I think that's one way of looking at it. Or it just violates the structural reason for the protection is that when a senator is making a speech before the House or taking a vote on a legislative action, he's supposed to know that's not going to be used to question him in any way, shape or form in another forum. And once excluded speech or debate clause material goes in front of the jury as part of their deliberations, and we know they at least got to the laptop, that seems to me to fully implicate the reasons for the clause and gives us this kind of structural error. And I would say like Helstowski is worth another read because it is remarkable. I mean, this is a congressperson who didn't invoke the speech or debate clause until his ninth appearance in the grand jury. And yet the court said that's not a waiver because the clause is that central. It's that important. And then the one other thing I would just underscore is that the one thing we get from the Johnson case from the Supreme Court is that was a case where the speech or debate clause material only went to the jury on the substantive counts. And the Fourth Circuit in that case said we got to do the whole thing over again because there was that exposure to the speech or debate clause material. And the court essentially affirmed that. Three justices dissented. But you said exposure. No, that's one where the jury actually had it, considered it. I mean, that's different than this case, isn't it? No, this exposure. I mean, we don't know for a moral fact whether they saw it or not. We know they saw the laptop that included it. And we know that that wasn't supposed to happen because the judge excluded that evidence. So at that point. So you're saying there should be a presumption that if something went back there as a needle in a haystack, we're going to presume that the jury saw it and that there was prejudice. Yeah, it wasn't supposed to be in the haystack. With all due respect, it wasn't supposed to do be in the haystack at all. It was excluded. There's no question about that. The issue is what happens when something that was excluded in your view, properly excluded, gets to the jury and the district court found that there is that the jury didn't see it effectively. Right. You said it's exceedingly unlikely that they saw it. Nobody knows for sure. And we can't even do forensic testing because the government wiped the laptop. So I don't think. Let me just ask that if the government if if there had been a wiping of the laptop and it showed that if there had not been a wiping of the laptop and there was an analysis of the laptop that showed it hadn't been accessed in the time that the jury had it, you would then agree that this is not a problem? I would still be here arguing, but I think I would have a weaker argument for sure. OK, but I think exposure under these circumstances is enough. So the radiation, you don't even have to know it's there. Well, I mean, actually, I'll take the analogy a little bit. Not that you don't have to know it's there, but I think speech or debate clause material is kind of radioactive. It's not supposed to be part of the deliberations at all. No, I think that's right. I don't think there's any dispute about that. As I mean, in terms of the ruling that the court made, the only issue is what do you do when it slips into the jury, you know, the jury room for a moment? And you're saying that it's a new trial. Yeah. When every time when you can't be sure, at least now concede to the harder case, like at least when you can't be sure that the jury didn't see it. And here I do think it's relevant. We're in the realm of speculation. And I think the jury asked three things in terms of jury questions. And one of them is, can we get a cable so we can look at this laptop? So the Johnson point is interesting. So you're saying the speech that he made in the Congress went before the jury as part of the conspiracy. And I guess you could have said something like it's harmless because he just said on the floor the things that he said to pressure the assistant attorney general anyway. But the court says, no, you have to have a new trial. Like, that's your point, right? That's my point. But of course, it's not that it was just a piece of evidence that was introduced erroneously. The jury was invited to consider the speech as part of the unlawful scheme, right? Well, sure. But here, once this goes in front of the jury. So the jury is being invited to impose liability on the member of Congress for making the speech. That's not what's happening. That's not what's happening here. Sure it is if they get to it. And this gets to the broader problem the government has, right? Like in these kind of cases, they have to negotiate between a rock and a whirlpool. Because on the one hand, they can't use speech or debate clause material. And on the other hand, they've got to prove an official act. So most of the official acts are protected by the speech or debate clause. So they had a real problem in proving these cases. Now, I'm not saying it's impossible to prove it. But if the jury sees something that they shouldn't have seen on the speech or debate, then that's going to be something that's evidence of an official act. And they're being asked to decide what's an official act. And they're being told, well, it has to be the kind of thing that you can have a vote on or can be pending. But this evidence that you're talking about is not an official act that anybody contended was the quid pro quo. It was prior context for the one that they think was part of the quid pro quo, right? Well, again, I mean, I'm not sure the government asked them to draw those kind of fine distinctions. Well, it did because it was never admitted. But, like, if they had admitted it, that was what the role of this evidence was going to play. Well, as my friend said, when the government was trying to get it admitted, they said how critical it was. So I don't think we can sort of say, well, it didn't really go to the critical acts. And I also think the way this jury is instructed in a case like this where some stuff is excluded, they're looking for an official act. That's not easy to find with some of these things. And so all of a sudden, if they did have access to that, I think it would be very, very probative. And I think taking a step back, I think if you look at this case, it is a situation where the government has, you know, they want to sort of switch between the counts. And where they're strong on speech or debate, they say, well, it's the Qatari thing. There's not as much of a speech or debate clause argument. But I don't even know really what the official act is on the Qatari-related counts. And then when they get to Egypt and the District of New Jersey U.S. attorney, they're, you know, they say, well, there's an official act, like nomination, that's an official act, or withdrawing the prosecution would be an official act. But that's where they have big speech or debate clause problems. And just on the New Jersey one, just as an illustration, like there's a dispute between the parties when the advice and consent kicks in. We got Schwartz and Kastansky. They got Adam White. I mean, that seems like a substantial question. So like the Constitution says the president shall, sorry, the president shall nominate and bind with the advice and consent of the Senate shall appoint. So isn't it pretty clear from the Constitution that whatever advice and consent means, it is relevant when deciding whether a nomination will lead to an appointment. But the power to nominate just by the text belongs to the president, right? Well, I mean, yes, for sure. I mean, I'll grant you that. But like this court, when it was looking at the clause for other purposes, said, obviously, in order for advice and consent to work, the senator has to get in there before the nomination is made. And that's kind of what the advice can do. But that's right. So like when somebody is nominated and the senator is meeting with the person to decide whether or not to vote for the appointment, that's got to be fact finding in support of their vote on the appointment. Right. But in this case, you have Senator Menendez evaluating potential candidates that he's going to recommend to the president to appoint. And that is trying to get the president to exercise his power of appointment in a way the senator likes. That is lobbying the executive branch to exercise its authorities the way he wants it to exercise them. Right. I wouldn't say that. I would say it's part and parcel advice and consent power. Like, I mean, you know, look, in certain circuits and certain districts, they have these like committees that are put up and there's sort of an agreement in advance, at least if the party gets a practice. Right. It's a practice that senators recommend. I mean, it's really only when the senator is the same party as the president. They're going to recommend a candidate to the president. But the fact that it really only applies when it's the same party suggests that it is a matter of politics. It is the kind of cajoling of the executive branch and trying to get the executive branch to do what you want that the court in Gravel said is not legislative. See, I would say advice and consent is different. It's one of the few things where there is sort of like even before the president does the act, I think there's a constitutionally protected role. I would say it's a legislative act. I agree it's like a close case. And, you know, I got a couple of constitutional scholars. They got a couple of constitutional scholars. They got Adam White. I like Adam White. He's a smart guy. But I think that's the heart of a substantial question that gets you over the hump. But why is it just because some people said it? I mean, you cite Cass Sunstein. Cass Sunstein says a new thing every week. I mean, it can't be that it becomes a question just because a thought occurred to Cass Sunstein. So I'm looking at the text, right, and what the district court said. And it says, shall nominate and bind with consent of the Senate, shall appoint. I think you conceded that it's the president's power to nominate. And the advice and consent function occurs in deciding whether to vote on the appointment. And so if here it's all conceded that the senator is doing advanced work to decide who to try to get the president to nominate, that's just like lobbying an executive branch agency to implement the favored policy preferences of the senator. I don't think it is, and I didn't mean to concede that the timing is critical. I mean, I agree that it's the president's appointment. But I think you can provide—  Yeah, nomination. Sorry, sorry. But you can provide advice as a senator before that takes place. And I don't think that's ordinary lobbying. All right. Well, I got a couple of constitutional scholars here. I'm going to—we'll hear from the government. Thank you, Your Honors. Thank you very much. Mr. Manteglione. Thank you. May it please the Court, my name is Paul Manteglione. I represented the government at the trial, and I represent the government at this appeal. What I'd like to focus on, though I'm happy to field questions on any of the issues that the Court has, what I'd like to focus on first are a few points about the laptop, and then I want to come back to the advice and consent timing. So what the defendants need isn't just a presumption that the jurors reviewed this material— Exposure, I think, was the term. Right. They were exposed to it. Right. They need the—you know, there's no substantial question. There's no case that holds or even suggests that jurors being near and specific. So what's the basis for the district court's conclusion that the jury likely didn't see this? Well, the basis is the timing and the volume and, you know, what would have had to have happened for them to do it makes it incredibly— unlikely is really an understatement of how, you know, practically impossible it would have been for them to do it. There is—I don't think that there is anyone who honestly believes that any juror actually accessed this material. There is some uncertainty, obviously, because we don't have forensic proof of this. But when—you know, the jurors had no idea what to look for. They had no idea that this—that there was anything of any possible interest in any of these—in any of these exhibits. And, indeed, they only pertained to the subject matter of military aid to Egypt that the government had said you don't even need to rely on military aid to Egypt at all in finding each of the Egypt counts proven. And that's what we told the jury in our summation before the benefit of hindsight that we learned that this had even happened. Now, without knowing that there had been a ruling, without knowing that there was anything to look for, they had one laptop and about two days to potentially look for it. Defense counsel had extensive teams of professional lawyers and multiple computers on which to parallel process this. They likely had review software, and they knew that there had been a ruling. They still didn't find it in the two-day period before this went to the jury. But then they also, after taking weeks, almost a month, of a document-by-document review of the laptop, once they learned that there were a few files on the laptop that had this issue, they didn't find the other ones. We did, and we alerted the court, but there is no way that the jury, who had no way, no idea of what to look for, no knowledge that there was anything possibly significant, was going document-by-document and would have found this. Indeed, in Menendez's briefing on this, he calls the idea that they would have happened upon this a straw man. I think that everyone knows this didn't happen. There is a presumption of prejudice. But you don't dispute it's an error. It shouldn't have been submitted to the jury, right? Absolutely. So what about the argument that the speech and debate clause creates a kind of structural separation of powers principle? And if you have evidence of legislative acts that's being introduced in a criminal case that is questioning the motives of a member of Congress about why he voted on legislation, that's an intrusion of the judicial branch into the executive. And we should say whatever you're doing here is invalid because that is just overstepping the bounds of judicial authority. Well, so I mean, first of all, I really think that there's a difference between error that was presented to the jury, actually subjectively perceived by any member of the jury and comprehensible to and understood by the jury and others.  So if actually these things were presented to the jury and after the fact we decided that it was a speech or debate violation, would that lead to automatic vacater of the conviction? Well, no, it wouldn't. The Johnson case that the counsel for Mr. Davies cited actually did confront that situation. Not something on a laptop that everyone knows was almost certainly never seen, but something that was actually featured, argued part of the trial on a conspiracy count. And what happened there is that the Court of Appeals said, we think that that error prejudiced, that it infected through spillover prejudice, ordinary spillover prejudice analysis, the other counts. And the Supreme Court didn't say, oh, no, we don't do prejudice analysis. They said, no, we're not going to disturb. The Court of Court of Appeals is assessment of the record. They acknowledged that prejudice analysis was appropriate. And then the dissent said, actually, we're going to assess the record. And we think that those counts should have survived. Right. So the majority in the dissent both conducted a prejudice analysis. They just differed as to whether there had been prejudice on those other counts. But this isn't a quiet. But everyone was unanimous on the rule that you do that analysis. And we know that because in the Brewster case, the Supreme Court then cited and quoted the dissenters, saying that the dissenters would have found that these other counts survived and said Johnson thus stands as a unanimous holding that the government may bring such a prosecution as long as it doesn't rely on legislative act. But obviously the only rule that the Johnson majority and dissenters could be unanimous on is necessarily one where you do that prejudice analysis because the Johnson dissenters were saying those counts should have survived. And Helstowski. I understand. But the Supreme Court said identifies the issue in which they're unanimous. It's the fact that you you can bring a corruption case as long as you're not relying on evidence of legislative acts. Right. But the the the Johnson justices would not be unanimous. But one can have the court pointed it out at a later case or not. You're saying that in Johnson, all of the justices are doing a harmless error analysis. They're deciding whether the introduction of the legislative act was harmful and could have led to the conviction of their counts. That's exactly right. And so did the Fourth Circuit in the United States versus Dowdy case where the Fourth Circuit, you know, again, legislative act evidence was presented. It led to the vacater of one count, but other counts survived. Again, there's not this rule that because there's an error, we just throw the ordinary rules of remedies up the window in the proper analysis speed to assume that they saw it since the government wiped the laptop and then conduct a prejudice analysis. If they saw this, what did it prejudice them with respect to the counts of conviction? So we extensively addressed this concept, which is essentially sounds in spoliation on in docket docket item number 648, where we went through in detail what what inferences, if any. The the court should draw from the fact that the laptop was reused, that it's not the government is all of a sudden prevent providing one laptop for criminal trial, which then has to not touch. And the spoliation analysis shows very clearly that a presumption against the government, even even a permissive one, would be absolutely unfair. So, first of all, there has to be a clear duty to to preserve in order for any type of presumption, even a permissive one to to issue in the case of electronic evidence under the civil rules, which this court has deemed to be instructive in criminal cases. Those not expressly held it because of the issues with electronically stored evidence, which we all are aware of. There actually has to be a finding of intent to deprive the adversary of the information. So there would actually have to be a finding that we were trying to prevent counsel somehow from examining the metadata of the files. Obviously, that that didn't happen. But finally, even if there had been spoliation, even if there had been a duty to to preserve and a culpable intent, the purpose of a spoliation inference is never to give the other party a windfall by engaging in presumptions that are unrealistic. If we just take we assume they saw it, why wouldn't it have prejudiced the defendants for them to have seen that? What's the government's position on that? Oh, absolutely. Well, the district court correctly found in a decision that is entitled to substantial weight, a fact bound decision that they are unlikely to have understood it given the context of the trial and that it also concerned a matter as to which there was abundant, properly admitted evidence. That's also a finding entitled to deference. And it's also plainly correct. It also, by the way, sort of undisputedly has nothing to do with certain counts. It has the the materials on the laptop had nothing to do with the New Jersey attorney general conduct. Therefore, bail pending appeal as to Hanna is is unavailable for that reason alone. And it has nothing to do with the District of New Jersey or Qatar conduct. And therefore, bail pending appeal for Davies is unavailable for that reason alone. So, you know, each of these findings by the district courts, they they are entitled to deference, but they're also just obviously correct. I think everyone knows that this case was not about those phrases. It wasn't how it was argued. It wasn't how it was presented. We know the jury almost certainly never saw it, but there was no facts that could have changed any mark that a juror would have made on the verdict sheet as a result of that, as the district court found. Now, I do want to talk. The district court also says that even if the jury did see it, it wouldn't have understood it. Is that right? I think that that's absolutely correct. The the amount of contextualizing that had to be done for these these very complex document sets. We're talking about six hundred fifty one page chat chains where on pages five hundred forty eight and five hundred forty nine. There's you know, there's a sort of brief, ambiguous phrase where you actually then have to go to some other document to attribute who's even speaking to whom. The amount of contextualizing that has to be done in the presentation of evidence at the trial and then in the argument is is highly substantial. So I think that the district court's finding on this, Judge Stein gave a very careful opinion. He was absolutely correct about that. I do want to talk briefly about advice and consent, because it's not just, well, here's a scholar in a law review article. Here's a scholar on the other side. There is, as you pointed out, Judge Menasci, the text of the Constitution. It is the you know, it is advice and consent. It's not with the advice of the Senate shall nominate and with the advice and with the consent of the Senate shall appoint. But there's also the Supreme Court in the Edmund case that Dabies cited in in his reply brief. The Supreme Court actually says that the president's exclusive constitutional power to nominate serves important accountability related functions. There's a quote in in the Edmund case from Alexander Hamilton where they're sort of quoting with with approval. Alexander Hamilton arguing that if there's a bad nomination, the president is going to take the blame exclusively. This is sort of the structure. It's how the text is set up. It's how everyone understands it. And it's also obviously we all understand it because these pre recommendation nominee pre nomination recommendations, they don't always happen. No one thinks that they are constitutionally required. But why does it have to be a constitutional requirement for it to be a legislative act? So why wouldn't we say, well, we know that the Senate eventually is going to vote on nominees. And so it does a lot of stuff in preparation for that vote. And one of those is getting involved in who's being nominated in the first place. And it all is like legislative fact finding in anticipation of a vote. This is like advance work and anticipation of a vote on the appointment. But that would extend the sort of penumbra around the actual constitutional text of speech or debate on the floor of either house just to encompass really everything that that senators do. And we know you don't doubt that after. I mean, maybe you do after a nomination is made and the nominee is meeting with the senators and the senators deciding whether to vote for or against that person. What's said in that meeting, that speech or debate. Right. No, we don't. We don't disagree with that. And we didn't present any evidence. So something in advance of the actual vote is predicted by the speech or debate clause because of its connection to the vote. Well, but it has to be sufficiently closely connected. We know from the Brewster case that that Representative Brewster was engaged in all kinds of what could be called informal fact finding about his vote on the pending postage rate legislation. That informal fact finding was talking with a constituent who had a position on that particular legislation and wish to offer a bribe. But so then let me ask you, what's the difference between these two things? So if a senator meets with a nominee and then says to the president, I don't know if I could vote for this guy. I've got these problems with him. It was a bad nomination, but, you know, maybe, you know, I could see my way to it if I don't know, you do something or rather they have some conversation about the nomination. What's the difference between that advance work and before the nomination? The senator saying to the president, you know, I could see my way to voting for this guy or that guy, but maybe not these other people you're considering. Well, I mean, the line that the courts have drawn is how closely it is to connected to the activities that are prescribed in the constitutional text here. What the evidence at trial was about was the the senator dispatching a political operative, not the member of his staff at all, in order to figure out whether he would be recused from a certain specific criminal case. The criminal case of the person who had been giving him kilogram bars of gold and envelopes of cash that really is very far removed from the floor of the Senate. And so let's say Selinger had been nominated like the president exercised his power of nomination. There was a nomination before the Senate and he did the same kind of thing. He was like dispatching his staff to figure out, like, will he be able to make decisions on this issue or that issue? Like, what does he think about these kinds of prosecutions? Well, that would have presented a much closer question. We can look to Gravel and and Gravel actually does draw a line here where they say there they were talking about some advance work for an actual committee hearing. So that would be much closer. Fact finding during the post nomination period would be much closer. And even there, Gravel dissolved a broader protective order by the district court and replaced it with saying that that type of advance work can can't be inquired into unless it is a crime. So you can't violate a generally applicable criminal law in preparation for the legislative act. That is the principle that this vetting may be in context. You think it shows there was a crime, but like it's not itself a crime. Well, I mean, I think it really depends if it was an attempt to pressure or advise in exchange for in exchange for things of value, then then that would be that would be essential conduct element for for the bribery offense. That would be exactly the same indistinguishable as the commission of other crimes in preparation for a hearing. And we know that from Brewster that, you know, what they were sort of preparing for was as formal and as speech or debate as it gets. It was a vote on the floor of the House. But if the means that you're using to sort of prepare for it is is, you know, reaching a corrupt bargain with someone for a thing of value in exchange for those promises, that's not protected. We know that from Brewster. We know that from the Renzi case where which cited and applied to Brewster. And that is at most what would have happened here, even if this had happened post nomination, which obviously it didn't. And, of course, even if Davies had standing to to bring this or Hanna had standing to to bring those other claims. And I would say that, you know, you can very easily deny this, all of this on the merits. But regarding standing, Gravel is really quite clear. Didn't say, well, you import 10th Amendment jurisprudence into here any more than we import speech or debate. Well, yes. Right. There's injury causation and redress ability. Right. He's got standing. Just the question is whether he is protected by the speech or debate. Well, yes. That's a merits question. It's not like a question of standing, I suppose. I mean, I think that the question is really whether the right is invocable in the language of Gravel by any other person. And Gravel was very clear that it wasn't and very clear why it was like whether it protects him. It's not whether he suffered an injury and there's causation and redress ability. Like if he's if he's right about the scope of the speech or debate clause, then we would vacate his convictions. Like, obviously, it's redressable of an injury that he's suffering. Well, you're using the word standing, but it's really about the scope of the speech or debate clause. Right. Yes. But it is not at all anomalous in constitutional, you know, in constitutional issues for one person to have a right not to have certain evidence introduced against them and other people not to have that right in the castigar context. Right. The scope of the constitutional right is use in derivative use. I get that. I even agree with that. So, like, you know, you might have standing to make an argument that I can invoke the protections of the speech or debate clause. The answer might be, no, you can't. But that is a merits question. That's not a standing question. Sure. That's right. But that would lead to the, you know, in a castigar case that could lead to the conclusion that one person actually gets their conviction reversed because, you know, evidence that was derivatively used from their compelled statements was introduced at the trial. And the codefendant, who was subject to the exact same evidence, would not get their conviction reversed. So I agree that the word standing was I used it loosely. Practical matter. I mean, here, Senator Menendez has tried alongside the other defendants. And so he's invoking the speech or debate clause left and right. So there's no circumstance in the trial where something is admitted. And they say, well, it's only admissible against these other defendants and not against the senator. Right. Well, but this is just like an extra argument for why you're saying they would not be able to prevail on appeal. But there's no decision of the district court in the trial that depended on who can invoke the clause and who can't. That is exactly right. That is just if if there was something that the district court did that actually violated the speech or debate clause, which there was not, then the, you know, Gravel was very clear that to prevent a legislator from allowing from relieving others from the operation of generally applicable criminal laws. It is only the privilege of the senators and would only result in reversal as to him. However, I think that it's very possible that you'll you'll conclude that the merits are even clearer than that. We think that there is really no no issue that the district court carefully protected the speech or debate clause and all. All right. Well, I think we got our money's worth and we have a full house behind you. We will reserve decision. Thank you all very much.